IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **ROBERT SCOTT SHEARER,** *Plaintiff,* | Civil Action No. _____ |
| *versus* | **(Jury Trial)** |
| **CITY OF LEAGUE CITY, TEXAS; OFFICER ZACHARY PAIGE,** *Individually*; **OFFICER CHRISTOPHER THOMAS,** *Individually*; and **OFFICER KEITH BELL,** *Individually*; *Defendants.* | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JEFFREY V. BROWN:**

Now comes Plaintiff Robert Scott Shearer, complaining of Officers Zachary Paige, Christopher Thomas, and Keith Bell, *all individually,* and of the City of League City, Texas, for the violation of his First, Fourth, and Fourteenth Amendment rights, as well as his rights under the Americans with Disabilities Act. He respectfully shows the Court as follows:

**Preliminary Facts/Overview**

1. Plaintiff R. Scott Shearer is an upstanding citizen, a decorated local defense attorney, and has worked hard his whole life. His practice includes a history of many remarkable cases at the appellate and trial level, including the only case in Texas that reversed a criminal conviction for the trial court's failure to provide a jury instruction that would have

clarified a statute in a manner consistent with the statutory definition of the ambiguous term. *See Navarro v. State*, 469 S.W.3d 687, 704 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (Frost, C.J., dissenting) (noting the "apparent first in the history of Texas jurisprudence").

2. For medical reasons stemming from diabetes, Scott unfortunately had to have all the toes on his left foot amputated, a very painful and debilitating procedure. Due to his conditions, he easily qualified for, and was issued, a handicapped parking placard.

3. Due to his diabetic, and cardiac, condition Scott's physicians ordered and prescribed exercise. Pursuant to his doctor's orders on July 28th, 2023, Scott drove to his gym and was parked in the handicapped spot outside of his gym, waiting to go in. His placard was in his vehicle, but because Texas law prohibits obstruction of the driver's view, he knows that he is not allowed to drive with the placard hanging from his rearview mirror. Officer Zachary Paige arrived on scene, and asked Scott to exit his still running car before he was allowed to find and hang his placard. His discussions with Officer Paige were at all times calm and civil, and he promptly obeyed all of Officer Paige's instructions. Officers Christopher Thomas and Keith Bell arrived later, and he was at times laughing and joking with all three Officers. Officer Thomas at one point apologized for taking so much of Scott's time. Scott offered to find his placard, and also offered to move his car, but was denied.

4. In an apparent first in the history of League City — or at least the only time in 96 such violations since January 2020 — Officer Paige decided to arrest Scott for a handicapped parking violation. Scott's placard was found in the car, and he had both explained and showed his disability to Officer Paige and informed him the placard was located in the car.

## Jurisdiction and Venue

5. This Court has jurisdiction under 28 U.S.C. § 1331 federal question jurisdiction because this case arises under 42 U.S.C. § 1983 for an alleged violation of Plaintiff's civil rights. Jurisdiction also exists under 28 U.S.C. § 1343(3) to redress the deprivation of Plaintiff's civil rights.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the Defendants reside within the District, and the incident at issue took place in and about Galveston County, Texas.

## Parties

7. Plaintiff Scott Shearer is a resident of Galveston County, Texas.

8. Defendant Officer Zachary Paige is sued in his individual capacity, and he may be served with process at 555 W. Walker Street, League City, Texas 77573, or wherever he may be found.

9. Defendant Officer Christopher Thomas is sued in his individual capacity, and he may be served with process at 555 W. Walker Street, League City, Texas 77573, or wherever he may be found.

10. Defendant Officer Bell is sued in his individual capacity, and he may be served with process at 555 W. Walker Street, League City, Texas 77573, or wherever he may be found.

11. Defendant City of League City, Texas is a governmental body existing under the laws of the State of Texas and may be served with process by serving the League City Mayor or City Secretary at 300 W. Walker Street, League City, Texas 77573.

## Additional Facts

12. On July 28th, 2023, Plaintiff Scott Shearer was going about what should have been a normal day. He ate an early dinner at a nearby restaurant and picked up his dry cleaning before going to the gym where he had been many times.

13. When Scott arrived at the gym, he backed into the handicapped spot in front and kept his car running. Due to his diabetes and a past heart attack and triple bypass surgery, exercising is prescribed and encouraged by his doctors as important for his health, and it is equally important for him to exercise carefully due to his amputation and heart condition. Scott had been legally issued a handicap parking placard.

14. Because he was still full from eating an early dinner, Scott waited in his running car outside the gym to digest a bit before exercising. As many people would, he passed the time by checking emails and social media on his phone.

15. While Scott was sitting in his car someone evidently called the League City police, perhaps due to waiting in his car longer than usual. Defendant Officer Zachary Paige was the first to respond to the call. Plaintiff told Officer Paige what he had been doing (waiting to digest and reading email and social media) and later repeated his explanation to Officer Thomas. Over the course of the encounter, Plaintiff offered to show Officer Paige his phone to prove that there were no pictures *twice*, but Officer Paige refused. Any investigation that took place into the caller's claim was quickly resolved in Plaintiff's favor, which Officer Paige later confirmed.

16. Very shortly after arriving on scene (less than a minute), Officer Paige asked Scott to step out of his car. He was not given an opportunity to find his handicapped placard despite being asked about it and informing Officer Paige that it was somewhere in the car. He readily complied with Officer Paige's instructions and answered Officer Paige's

questions. He presented no threat to Officer Paige at any point. Scott stayed at the front of Officer Paige's vehicle as instructed for the duration of the encounter.

17. At one point, Officer Paige requested permission to perform a Horizontal Gaze Nystagmus (HGN) field sobriety test. As was his right, Scott refused. Other than his unsteady gait due to his amputated toes — which he showed Officer Paige — there were no signs that Scott was intoxicated and no officer sought an easily obtainable blood draw warrant. The next day, Scott voluntarily paid for a broad 18-substance drug test, and was negative for all 18, including alcohol. Scott was not intoxicated or under the influence of any mind-altering drugs.

18. Officers Christopher Thomas and Keith Bell arrived after Officer Paige had received Scott's license and asked about the HGN test. Shortly after arriving, Officer Thomas spoke with Scott about his job and commented about the quality of Scott's business cards. He then verified that Scott's key to the gym was genuine. During their interactions, the tone was positive, and Scott was laughing and joking with the Officers. Officer Thomas even apologized for taking so much of Scott's time. Scott offered to move his car but was denied.

19. Shortly thereafter, the three Officers and an unidentified fourth Officer stood out of Scott's earshot and conversed for about 5 minutes about an unknown topic. During this conversation, Scott was left standing at the front of Officer Paige's police car, where he waited patiently.

20. After the Officers' discussion, Officer Paige approached Scott and requested consent to search the car for the placard. He indicated that he needed to "verify" the placard, otherwise he would have to take Scott "to jail." Instead Scott offered to find the placard himself while Scott looked for the placard. Officer Paige refused, then arrested Scott. At some point, Officer Paige mentioned that he was acting "based off my interactions."

21. Scott was compliant and easy to maneuver at all times during handcuffing and being loaded into the police car.

22. Officer Paige transported Scott to the jail for booking while Officers Thomas and Bell searched Scott's car. During the ride, Scott asked Officer Paige what would happen if the other Officers found the placard, but Officer Paige did not answer. After they arrived at the jail *but before he was even brought out of the car* and booked into jail, Officer Paige received a call asking Officer Paige to find out from Scott how to open Scott's trunk. At this point, Officers Thomas and Bell informed Officer Paig they had found the placard. Despite knowing this Paige did not return Scott to his car but instead proceeded to take Scott out the squad vehicle and then booked Scott into jail anyway for not displaying the placard. Officer Paige could have released Scott immediately or in just a few minutes returned him to his vehicle.

23. Once in custody, a bond was set. Scott requested that the judge set an attorney bond. The judge responded by setting a personal recognizance (PR) bond. The judge in question was one that he had practiced in front of before, and interacting with her as a defendant in jail was extremely embarrassing.

24. Scott was required to show up at court to set the case for trial.

25. Scott paid several hundred dollars to get his car out of the impound lot.

26. Plaintiff submitted an open records request for the City of League City's records on handicapped parking violations. He received records dating from January 2020 through September 2024. During that nearly 5-year span, there were 96 recorded violations for "Park In Handicapped Place" (81), "Park Using Handicapped Placard When Not Authorized" (9), or "Park Blocking Handicapped Access" (6). Plaintiff was the **one and only** arrest in the records for a handicapped parking violation, and his violation was classified

as "Park In Handicapped Place." There were 58 "Park In Handicapped Place" violations between January 2020 and Plaintiff's arrest, and 22 such violations after Plaintiff's arrest until September 2024. Not a single other violator was arrested. Considering all violations, 71 violations occurred before Plaintiff's arrest, and 24 occurred after.

27. Scott suffered physical pain and discomfort, anxiety, embarrassment, and other mental anguish due to the officers' actions and inactions.

28. After the prosecutor reviewed the evidence the case against Scot was dismissed without any requirements.

## Claims

29. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

30. The First Amendment to the Constitution reads, in relevant part, as follows:

   Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

31. The Fourth Amendment to the Constitution reads, in relevant part, as follows:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

32. The Fourteenth Amendment to the Constitution reads, in relevant part, as follows:

   No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

1. **Retaliation under the 1st Amendment**

   33. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

   34. The U.S. Supreme Court has consistently held that government officials cannot retaliate against individuals for engaging in protected speech absent sufficient non-retaliatory grounds. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998), *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–84 (1977)).

   35. To determine whether an arrest was retaliatory, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest." *Id.* at 1724 (citing *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).

   36. However, the absence of probable cause is not required where "officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* at 1727.

   37. Plaintiff brings his First Amendment retaliation claim against all three Defendant Officers, because they all participated in his arrest.

   38. Officer Paige arrested Plaintiff directly in response to Plaintiff's decision not to provide consent to search, and, in Officer Paige's words, "based off my interactions."

   39. Because the arrest was in retaliation against Plaintiff's protected speech, the Officers may be liable irrespective of the presence or absence of probable cause for arrest.

   40. Plaintiff asserts that the Officers lacked probable cause to arrest him for the reasons described in the following section.

41. In the alternative, Plaintiff asserts that the data provided by League City itself shows that officers "typically" (or, in this case, exclusively) "exercise their discretion not to" make arrests for handicapped parking violations.

42. As described in the following section, Texas state law also directs officers not to arrest for handicapped parking violations; it provides that violations may be enforced by an officer "fil[ing] a charge against" the violator, but does not provide for warrantless arrests. In contrast, Texas state law does explicitly permit warrantless arrests for other traffic violations.[1]

43. Plaintiff, as would any person of ordinary firmness, has been chilled from exercising his rights during traffic stops.

## 2. Unreasonable Seizure, False Arrest, and Due Process under the 4th and 14th Amendments

44. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45. The Fourth Amendment protects the People against "unreasonable searches and seizures." The "touchstone" of Fourth Amendment analysis "is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109 (1977) (per curiam) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)).

46. An arrest violates the Fourth Amendment when it is made without probable cause. *Kerr v. California*, 374 U.S. 23, 37 (1963) (plurality opinion).

47. The probable cause analysis "requires inquiry into whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable man's belief that an offense has been or is being committed." *United States v. Walden*, 707

---

[1] *Compare* Tex. Transp. Code § 681.010, *with* Tex. Transp. Code § 543.001; *see also ante.*

F.2d 129, 131 (5th Cir. 1983) (citing *Adams v. Williams*, 407 U.S. 143, 148 (1972); *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949); *United States v. Rojas*, 671 F.2d 159, 165 (5th Cir. 1982)).

48. When making that calculus, "the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

49. Claims of false arrest and false imprisonment "involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest [and] detention . . . without probable cause." *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988) (citations omitted).

50. "Liberty interests protected by the Fourteenth Amendment may arise from two sources -— the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223–227 (1976)).

51. The parking violation at issue is found in the Texas Transportation Code, Title 7, Subtitle H, Chapter 681 – Privileged Parking. Offenses under that Chapter are enforced as follows:

> A peace officer or a person designated by a political subdivision to enforce parking regulations may **file a charge** against a person who commits an offense under this chapter at a parking space or area designated as provided by Section 681.009.

Tex. Transp. Code § 681.010 (emphasis added).[2]

52. Violations under Chapter 681 are misdemeanors punishable only by a fine between $500 and $750, although repeat offenders may face fines up to $1,250 and up to 50 hours

---

[2] In contrast, violations under Subtitle C (Rules of the Road) may specifically be enforced by arrest without warrant: "Any peace officer may arrest without warrant a person found committing a violation of this subtitle." Tex. Transp. Code § 543.001.

of community service. Tex. Transp. Code § 681.011(g)–(k). There are no circumstances for which a handicap parking violation could be punishable by a jail sentence under the statute.

53. Plaintiff's arrest at the hands of all 3 Defendant Officers was not authorized by statute, and did not further any government interest. As a result, it was unreasonable under the Fourth Amendment, and violated Plaintiff's constitutional right to be free from unreasonable seizure.

54. Because Plaintiff was not given an opportunity to comply with the statute by either moving his vehicle or producing his handicapped placard, the arrest was made without probable cause. Additionally, even if the *initial* arrest was valid, Officer Paige's decision to continue to booking and jailing Plaintiff was without probable cause once he learned that the other Officers located the placard in Plaintiff's car.

55. In addition and in the alternative, all 3 Defendant Officers violated Plaintiff's due process right under Texas state law to have charges filed against him rather than be subject to arrest.

### 3. Failure to Intervene

56. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

57. A law enforcement officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although *Hale* most often applies in the context of excessive force claims, this Court recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna*, 726 F.3d 631, 646 n. 11 (5th Cir. 2013).

58. The Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). *See also*, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.").

59. As a result, officers may be liable under § 1983 under a theory of bystander liability when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646.

60. Officers Thomas and Bell were present for and assisted with Officer Paige's violations of Plaintiff's constitutional rights as described *supra*. They had an extended period of time to converse with Officer Paige about the propriety of the arrest, could have said at any point that Plaintiff could not be arrested, and could have told Officer Paige over the phone to not book Plaintiff into jail because they had found the placard. Instead, despite this ample opportunity to say *anything*, Officers Thomas and Bell chose to say *nothing* and thus may be liable as bystanders.

4. **Municipal Liability for Failure to Train**

61. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

62. Municipal liability for failure to train police officers arises when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378 (1989).

63. A single constitutional violation may be sufficient to prove deliberate indifference when officers are placed in "recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) (citing *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 117 S. Ct. 1382, 1390 (1997)).

64. Here, it is obvious that the difference in enforcement of parking violations (under Subtitle H, where warrantless arrests are *not* permitted) as opposed to traffic violations (under Subtitle C, where warrantless arrests *are* permitted) is a subject about which officers are placed in "recurring situations" where ignorance of that difference "presents an obvious potential for" constitutional violations, and the need for training on that difference is equally obvious.

65. On information and belief, Plaintiff alleges that League City does not train its officers at all on the difference in enforcement between parking violations and traffic violations. Indeed, the actions of the *four* officers on scene proceeding with an arrest for a supposed parking violation indicates as much.

5. **Liability under the Americans with Disabilities Act**

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. The Americans with Disabilities Act (ADA) Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress enacted Title II to extend the protections of the Rehabilitation Act to state and local governments, specifically stating that the remedies, procedures, and rights under the Rehabilitation Act are also available under Title II. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

68. "To succeed on a failure to accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith v. Harris Cty.*, 956 F.3d 311, 317–18 (5th Cir. 2020) (internal citations omitted).

69. Plaintiff is clearly a qualified individual with a disability due to the amputation of his toes and his diabetes, and he informed Officer Paige of both conditions, and Officer Paige saw the foot with amputated toes. Officer Paige also saw and noted Scott's less-steady gait when walking from his car to Officer Paige's car. Nevertheless, Scott was forced to stand for an extended period of time at the front of Officer Paige's car, he was prevented from working out as is crucial for the management of his diabetes, and he was unnecessarily subject to arrest. Not arresting Plaintiff and/or allowing him to sit during the encounter were more than reasonable accommodations that he was not afforded.

## Damages

70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

## Attorney's Fees

71. Plaintiff is entitled to recover attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. §§ 1983 and 1988.

## Jury Trial

72. Plaintiff requests a trial by jury on all issues triable to a jury.

## Prayer for Relief

73. Plaintiff respectfully requests that the Court:

A. Enter judgment for the Plaintiff and against the Defendants, holding the Defendants liable;

B. Find that Plaintiff is the prevailing party in this case, and award attorneys' fees and costs pursuant to federal law against the Defendants;

C. Award compensatory damages for Plaintiff against Defendants jointly and severally for the violations of his civil rights under the U.S. Constitution;

D. Award pre- and post-judgment interest;

E. Award declaratory and injunctive relief against Defendants if such relief is reasonable and just; and

F. Grant any other such further relief that is reasonable and just to which Plaintiff shows himself entitled.

Respectfully submitted,

*/s/Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
U.S. So. Dist. of Texas No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713/320-3785
Fax: 713/893-6737
Email: AttorneyKallinen@aol.com

*/s/Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas No. 24123583
U.S. So. Dist. of Texas No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573/340-3316
Fax: 713/893-6737
Email: alex@acj.legal

**ATTORNEYS FOR PLAINTIFF**